ALICE MELLON, DEFENDANT IN ERROR, v. VICTOR TALK-
ING MACHINE COMPANY, PLAINTIFF IN ERROR.

Argued June 28, 1911—Decided November 20, 1911.

1. When a press upon which a servant is working becomes out of
   order, and the servant complains of such defective condition
   to the representative of the master, who promises to repair it,
   and orders the servant to go back to work, and the servant
   resumes work, relying upon such promise, and, three days after-
   ward, is injured by reason of such defective condition of the
   press, the question of the master's negligence is for the jury.
2. While the servant assumes not only the ordinary risks incident
   to the employment, but as well all risks arising and becoming
   known to him during his service, yet the master, by promising
   to amend a defect complained of. as an inducement to the
   servant to continue, forthwith takes from the servant the risk,
   and thereafter, until the time fixed for repair, assumes it, unless
   the danger from it is so great or so imminent that a person of
   ordinary prudence would not continue in the employment after
   the discovery of the condition. Where the promise is general
   and indefinite the master's undertaking runs for a reasonable
   time.
3. Whether the danger from a defective machine is so great or
   so imminent that a reasonably prudent person would not con-
   tinue in the employment after the discovery of the condition,
   even though the master had promised to repair it, is a question
   for the jury, when, from the evidence, opposite conclusions may
   be reasonably drawn.
4. Whether the lapse of three days is a reasonable time for the
   servant to incur the risk in the expectation that the master
   will perform his promise to repair, is a question for the jury.

On error to the Supreme Court.

For the plaintiff in error, *Gaskill & Gaskill.*

For the defendant in error, *John F. Harned* and *Wescott &
Wescott.*

The opinion of the court was delivered by

TRENCHARD, J. The plaintiff below sued to recover damages
for personal injuries. She obtained a verdict at the Camden
Circuit, and the judgment entered thereon is here for review.

At the trial the jury was justified in finding from the evidence, if they believed it, the following matters of fact:  The plaintiff, a young woman, was employed by the defendant company to work at a press in the defendant's factory.  Her work consisted of placing a disk between the upper and lower plates of the press and removing it after it had been impressed by the upper plate descending by power applied through a belt. When the upper plate began to ascend she loosened the disk with a knife held in one hand and removed it with the other. She had nothing to do with keeping the press in order, nor with starting or stopping it, nor with applying the power. When the press was in normal condition and operation the upper plate raised and lowered through a space of four inches, with uniform and continuous speed and power.  When descending, a safety gate automatically covered, for the protection of the workman, the space between the upper and lower plates.  It required about thirty-two seconds for the upper plate to rise four inches and the same time to descend.  The weight of the die was two hundred and fifty pounds.  It operated under a pressure of sixty tons.  Three days before the accident, the press became out of order, as was manifest by the belt being loose and the safety gate "sticking on the top die."  Thereupon the plaintiff called the attention of the superintendent of the factory to these defects and he told her to go back to work and he would fix it.  On the day of the accident, and while the plaintiff was performing her customary work of removing a disk as the upper plate was ascending, the belt slipped or "jerked" backward and the upper part of the die "dropped like lightning" and fractured the bones of her hand.

Error is assigned upon the refusal of the trial judge to nonsuit the plaintiff and to direct a verdict for the defendant. Both motions were grounded mainly upon the contention that —*first*, no negligence on the part of the defendant was shown, and *second*, that the risk was obvious and was assumed by the plaintiff.

Every question raised and argued may be disposed of by a consideration of the legal propriety of the denial of these motions.

We pause to remark that the testimony at the trial now under review differs from that considered when the case was here before and reported in 48 *Vroom* 670. At that trial, as was pointed out by Mr. Justice Garrison in his opinion, the plaintiff testified that she had been told, when instructed how to operate the press, "not to operate the press if the gauge or gate was out of order." At the trial now under review there was no such testimony. On the contrary, the plaintiff testified that no such thing had ever been said to her, and her explanation of such inconsistency was such as to justify the jury in believing the testimony which she gave upon the trial under review if they saw fit so to do. It is therefore not contended that the rule laid down in *Card* v. *Wilkins*, 32 *Id.* 296, is involved in the review of the present case.

We are of opinion that the trial judge properly denied the motions to nonsuit and to direct a verdict. The plaintiff's evidence tended to show that the press upon which she was working became out of order. It is true that the defendant's evidence, on the contrary, tended to show that it was in perfect order, and hence, their contention seems to be that the plaintiff's injury was due solely to a delayed attempt upon her part to remove the disk, or delay in removing her hand, or both. But upon that question the plaintiff was entitled to go to the jury. There was not only her testimony that the belt slipped or "jerked" backward and that the upper part of the die "came down like lightning," but there were other circumstances which tended to show that the press was out of order and was not working perfectly and normally. When working properly the upper plate descended slowly under a pressure of sixty tons. If it had descended under that pressure it would have completely destroyed the plaintiff's hand. The fact that only the bones were fractured seems to indicate that the die fell of its own weight, which was two hundred and fifty pounds only. Again, the lower plate was so hot as to burn the hand if it was allowed to rest upon it. It therefore seems unlikely that the plaintiff thoughtlessly allowed her hand to rest there until the slowly descending plate fractured her fingers. If it had been slowly descending, it seems more likely that either the

pressure from above or the heat from beneath would have apprised her of the danger in ample time to have enabled her to withdraw her hand before it was thus injured.. Moreover, if the press had been in order, the safety gate would have covered the space between the upper and lower plates as soon as the upper part of the die began to descend, either warning the plaintiff of its downward course or rendering it impossible or inconvenient for her to have introduced her hand.

There are other circumstances which need not be detailed, some of which make for the plaintiff, and some which, it is conceded, make against her, but enough has been said to clearly demonstrate that the question whether the press was in order was for the jury.

The plaintiff's evidence also tended to show that she complained of such defective condition of the press to the representative of the defendant; that the latter promised to repair it, and directed her to go back to work; that the plaintiff, relying upon such promise, resumed work upon the defective press, and three days later was injured by reason of its defective condition.

The rule of law is that, while the servant assumes not only the ordinary risks incident to the employment, but as well all risks arising and becoming known to him during his service, yet the master, by promising to amend a defect complained of, as an inducement to the servant to continue, forthwith takes from the servant the risk, and thereafter, until the time fixed for repair, assumes it, unless the danger from it is so great or so imminent that a person of ordinary prudence would not continue in the employment after the discovery of the condition. Where the promise is general and indefinite the master's undertaking runs for a reasonable time. *Pavan* v. *Worthen & Aldrich Co.,* 51 *Vroom* 567; *Comer* v. *Meyer,* 49 *Id.* 464; *Andrecsik* v. *New Jersey Tube Co.,* 44 *Id.* 664.

In the present case the question whether the danger from the defective press was so great or so imminent that a person of ordinary prudence would not continue in the employment after the discovery of its condition, was for the jury, for the

reason that, from the evidence, opposite conclusions might be reasonably drawn. *Comer* v. *Meyer, supra.* Evidently both the plaintiff and the superintendent of the defendant company thought the danger not so great nor so imminent that the use of the press should be discontinued.

So, too, whether the lapse of three days was a reasonable time for the plaintiff to incur the risk in the expectation that the defendant would perform its promise to repair, was a question for the jury. *Dowd* v. *Erie Railroad Co.,* 41 *Vroom* 451.

Since the case was properly submitted to the jury, the judgment of the court below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, JJ. 13.

*For reversal*—None.